582 So.2d 127 (1991)
Christopher SEYMOUR, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2572.
District Court of Appeal of Florida, Fourth District.
July 3, 1991.
Richard L. Jorandby, Public Defender, and Anthony Calvello, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
Seymour was charged with burglary of a structure, possession of burglary tools and breaking into a vending machine. Although both his attorney and the prosecutor were present in the courtroom at his plea conference, Seymour himself was outside of the courtroom at the jail viewing the proceedings by closed circuit television. Defense counsel advised Seymour from the courtroom that in exchange for his nolo contendere plea the prosecutor would recommend thirty months in prison followed *128 by probation. Seymour questioned his attorney about the probation, saying he hadn't realized it was to be included in the plea agreement.[1] Defense counsel responded that this was the same plea agreement which they had previously discussed over the phone; he pointedly added that if Seymour was dissatisfied with it the defense was ready to go to trial, whereupon Seymour accepted the plea.
The trial judge then questioned Seymour regarding the voluntariness of his plea and his understanding of the rights he was waiving. The judge explained that the court did not have to follow the state's sentencing recommendation and that Seymour's actual sentence would depend on how he scored under the sentencing guidelines. The judge also said that the recommended sentence was based upon an assumption that Seymour's actual record was no worse than indicated in the plea letter. The court deferred sentencing to a later date.
At Seymour's later sentencing hearing, a similar procedure with closed circuit television was employed. Again, Seymour was not actually present in the court room but viewed the proceedings by television. During this hearing Seymour's guidelines score was calculated to be in the seven to nine year range. The prosecutor acknowledged that this was higher than the state had anticipated, but argued that the agreed sentence could be properly anywhere within the grid into which Seymour actually scored. The prosecutor recommended seven years. The trial court thereupon sentenced Seymour to a total of seven years, followed by one year of probation. Seymour immediately objected, saying that he hadn't agreed to this deal. He asserted that the maximum and minimum sentence had not been explained to him. The court explained that the higher sentence resulted from the fact that his record was worse than the state had thought. Seymour responded that he would not accept the plea, whereupon the court advised him that his plea had already been freely and voluntarily entered.
Seymour appeals both his conviction and the sentence. He argues that the trial court erred in conducting the change-of-plea conference and the sentencing hearing without his physical presence. He argues that there is no rule in Florida which allows for the use of televised appearances as a substitute for the defendant's actual presence in the courtroom.
We agree that it was improper to conduct the sentencing hearing without Seymour's actual presence and reverse. It is of vital importance that a defendant have the opportunity to engage in personal and private conference with his counsel to resolve the numerous problems and misunderstandings that can develop during the course of pre-trial proceedings. In Jacobs v. State, 567 So.2d 16 (Fla. 4th DCA 1990) we concluded that it was error to use a similar procedure at sentencing. We noted that rules 3.130 and 3.160, Florida Rules of Criminal Procedure, permit communication by way of audiovisual equipment only at first appearances and at arraignments. We expressly noted that the failure to include sentencing in these rules was not a mere oversight.[2]
Further, our review of the record in this case leads us to believe that, because Seymour's ability to consult with his attorney was not enhanced but actually was restricted by his televised communication, his change of plea cannot be described as voluntary. Perhaps one of the most important stages in a criminal proceeding for effective assistance of counsel is the change of plea. Given the pervasiveness of plea bargaining, it is absolutely essential for voluntariness purposes that the defendant have unfettered access to and communication with counsel.
We can imagine no more fettered and ineffective consultation and communication *129 between an accused and his lawyer than to do so by television in front of a crowded courtroom with the prosecutor and judge able to hear the exchange. Quite apart from that obvious inhibition is the added circumstance that the accused is deprived of the opportunity to look directly into the eyes of his counsel, to see facial movements, to perceive subtle changes in tone and inflection,  in short, to use all of the intangible methods by which human beings discern meaning and intent in oral communication.
Not every technological advance fits within constitutional constraints or the realities of criminal proceedings. We are most unwilling, even if the Fifth and Sixth Amendments permitted us to do so, to burden this stage of pre-trial proceedings with such an impediment to effective communication and understanding between the accused and counsel.
It does not appear that Seymour filed a motion in the trial court to withdraw his plea. Our reversal of his sentence is, therefore, without prejudice to allowing him to withdraw his plea of nolo contendere. If he and the state later want to enter into a new plea bargain, the change of plea and any resulting sentence must be had with him actually in the courtroom.
We reverse the sentence and remand for further consistent proceedings.
GLICKSTEIN, J., and STREITFELD, JEFFREY E., Associate Judge, concur.
NOTES
[1] In the procedures being used, Seymour's entire discussion with his attorney took place in open court in front of everyone present.
[2] We are aware of the recent decision by this court in Williams v. State, 578 So.2d 846 (Fla. 4th DCA 1991), but find the factual circumstances distinguishable insofar as the defendant in that case signed a written agreement consenting to video sentencing.